**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**SENKO ADVANCED COMPONENTS,
INC.,**

          Plaintiff,

vs.

**US CONEC, LTD.,**



          Defendant.

Civil Action No. _____

## COMPLAINT

Plaintiff Senko Advanced Components, Inc. ("Senko" or "Plaintiff") makes this Complaint, including a demand for a jury trial, against Defendant US Conec, Ltd. ("US Conec" or "Defendant") and alleges as follows:

## NATURE OF THE ACTION

1.     This action seeks past and ongoing money damages and permanent injunctive relief for the Defendant's acts of making, using, selling, offering for sale, and/or importing its accused MDC and MMC fiber optic connector and adapter products that infringe Senko's rights in seven issued U.S. patents.

## THE PARTIES

2.     Plaintiff Senko is incorporated under the laws of the State of Massachusetts, and its principal place of business is located at 2 Cabot Road, Suite 103, Hudson, Massachusetts 01749.

3.      Upon information and belief, Defendant US Conec, Ltd. is a corporation organized and existing under the laws of the State of Delaware, and its principal place of business is located at 1138 25th St SE, Hickory, North Carolina 28602.

## JURISDICTION AND VENUE

4.      This action arises under the United States patent laws, 35 U.S.C. § 101, *et seq.*, including 35 U.S.C. § 271, *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1338(a).

5.      This Court has personal jurisdiction over US Conec because, upon information and belief, US Conec is incorporated under the laws of the State of Delaware and therefore resides in Delaware. On information and belief, Defendant also regularly conducts business in this judicial district related to the products at issue in this action. On information and belief, Defendant uses, offers for sale and/or sells its products at issue in this action within this District or otherwise places such products within the stream of commerce with the expectation that they would be used in this District.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) because US Conec is, upon information and belief, incorporated under the laws of the State of Delaware and is legally deemed to reside in Delaware.

## INTRODUCTION

7.      The parties are competitors in the markets for various types of passive fiber optic connection components.  Traditional customers for the parties' competing products are vendors who provide fiber optic equipment and solutions to data centers, communication network providers, and other owners of fiber optic networks.  Fiber optic communications require a high degree of accuracy at each connection point for robust, consistent, and high-speed transmission of data.

8.      As demand for bandwidth has increased, networks increasingly use fiber optic systems instead of traditional copper-electrical systems because of fiber's capacity for higher speed and reduced maintenance. For example, networks rely on fiber optic components to connect the switches and servers that underlie high-speed computer and communication systems. In some fiber optic facilities, for example data centers, millions of connection components of the type sold by the parties are used to connect the optical fibers.

9.      Fiber optic cables hold one or more fibers that run between two points in a data center or communication network. It is challenging to directly connect (*e.g.*, fuse) one optical fiber to another, so cables are terminated with standard connectors that are configured to plug into corresponding adapters to make optical connections.

10.     Most optical connectors in use today retain the ends of fibers in high-precision ferrules. The ferrules, in turn, are mounted in a housing or plug frame that attaches to the cable. Optical connector housings include precise alignment and retention features that correspond to complementary features of the adapter. Since optical fibers are often less than the diameter of a human hair, these alignment and retention features have very strict tolerances to ensure the fibers line up in the adapter. For ease of use, fiber optic connectors can be equipped with extraction mechanisms that enable them to be disconnected from the adapter after initial mating.

11.     Two types of ferrules are common: cylindrical single-fiber ferrules and rectangular multi-fiber ferrules. The industry frequently calls multi-fiber ferrules "MT" ferrules. Various fiber optic connectors have been developed around both types of ferrules.

12.     For many years, fiber optic networks have employed "small form factor" ("SFF") single-fiber ferrule connectors and adapters. In the United States, the most common type of SFF single-fiber ferrule connector is an LC Connector, which comprises a 1.25 mm-diameter ferrule

in a square connector housing with an integrated upper latch hook for securing the connector to a mating adapter. Two individual LC connectors are frequently assembled together in a side-by-side configuration to make an LC duplex connector.

13.     The most common multi-fiber ferrule connector in the United States is called an MPO connector. In an MPO connector, there is a single MT ferrule that carries a plurality of optical fibers. This MPO connector has a rectangular housing and a spring-loaded sleeve and latching mechanism.

14.     Conventional LC and MPO connector and adapter components have met the industry's needs for many years. But within a fiber optic network installment, space can be at a premium. Optoelectronic transceivers have also advanced, creating a need for smaller fiber optic connection components that can accommodate more fiber connections in the same transceiver footprint.

15.     To meet the industry's desire for density, Senko has spent years developing a new generation of connectors and adapters with smaller footprints than the conventional components described above.  These efforts have yielded three all-new connection systems, which the industry now calls "VSFF," *i.e.*, very small form factor.  Senko offers two "duplex" VSFF connector platforms that utilize two 1.25-mm single-fiber ferrules in each plug and one "multi-fiber" VSFF connector platform that utilizes an MT ferrule in a plug.

16.     Senko's first VSFF product was a duplex connector platform called "CS". The CS platform includes duplex connectors and corresponding adapters. The CS connector has a 40% smaller size than the conventional duplex LC connector.

17.     After the CS connector, Senko released another VSFF duplex connector platform, called "SN". The SN connectors and adapters allow for even greater density than CS. Compared

with conventional LC components, the SN components allow for about three-times the fiber connection density.

18.   Most recently, Senko has begun marketing its SN-MT platform, which includes a connector and corresponding adapters. The SN-MT connector has a similar mating interface to the SN connector but uses a multi-fiber ferrule instead of two single-fiber ferrules. The SN-MT connector allows for about 2.7-times as many multi-fiber ferrules to be connected in a given footprint than the conventional MPO connector.

19.   Shown below is a chart with representative samples of Senko's CS, SN, and SN-MT connectors and their corresponding adapters:

| Product platform | Connector | Adapter |
|:---:|:---:|:---:|
| CS |  |  |
| SN |  |  |
| SN-MT |  |  |

20.     To achieve these improvements in fiber optic connection density while still meeting industry expectations for accuracy, robustness, and ease of use, Senko made significant research and development investments. Its research and development led to important innovations that underlie Senko's three VSFF product platforms. For example, Senko developed new low-profile push-pull latch interfaces that enable simple, accessible insertion and extraction of a VSFF connector within a small footprint. Senko also developed new ways to integrate the high-precision alignment features of connectors and adapters to save space. Additionally, Senko innovated new ways of enabling connector polarity reversal within the limited size available for VSFF connectors. Recognizing the importance of these innovations to the next generation of fiber optic network equipment, Senko consistently sought patent protection for its VSFF inventions. Seven of the resulting patents are the subject of this lawsuit.

21.     In addition to the VSFF products described above, Senko has numerous other products that relate to different fiber optic connectivity solutions.  Senko understands and values intellectual property rights that are intended to protect its products and innovation.  Senko has over 200 U.S. patents that cover various features and improvements in the field of fiber optic connectivity. Over 70 of Senko's patents pertain to VSFF interconnect systems.

22.     US Conec is also marketing two VSFF product lines in direct competition with Senko's patented VSFF products and in violation of the asserted patents.  US Conec's products in these two product lines are referred to herein as the "Infringing Products."[1]

---

[1] A list of specific "Infringing Products" currently known to Senko is provided below.  *See infra* ¶ 69.  Senko reserves the right to revise, amend, or supplement the list of Infringing Products as the case progresses.

23.     The first US Conec VSFF product line is called MDC, which, upon information and belief, includes a VSFF duplex connector and various mating adapters. The MDC connector marketed by US Conec has a similar size to Senko's SN connector.

24.     The second US Conec VSFF product line is called MMC, which, upon information and belief, includes a multi-fiber connector and various mating adapters. The MMC connector marketed by US Conec has a similar size to Senko's SN-MT connector.

25.     Below is a chart depicting representative Infringing Products that, based on information and belief, US Conec is selling or offering for sale, in direct competition with Senko's patented VSFF products:

| Product Platform | Connector | Adapter |
|---|---|---|
| MDC |  |  |
| MMC |  |  |

26.     None of US Conec's VSFF products is cross-compatible with any of Senko's VSFF products. For example, it is not possible to make a direct optical connection between an SN connector and an MDC connector or an SN-MT connector and an MMC connector.

Likewise, it is not possible to properly mate an SN connector to an MDC adapter, or vice versa, or to properly mate an SN-MT connector to an MMC adapter, or vice versa.

27.     The above-described Senko and US Conec fiber optic connectivity products are generally not sold at retail to consumers. They are instead sold most often in bulk quantities to suppliers that specify these components in bids to supply equipment to a fiber optic network installation. Together with a lack of cross-compatibility between the parties' respective connector and adapters, this often leads to the "single-winner" bidding aspect of the competition for sales between companies such as Senko and US Conec.

28.     These market factors generally mean that for every bid in which a given network installation chooses to buy US Conec's infringing connectors and adapters, Senko is shut out completely from making that sale–and often future sales–to that end customer and its vendors.

29.     On information and belief, US Conec has successfully offered its Infringing Products in direct competition with Senko as part of bidding on at least two recent large-scale fiber optic network projects. When US Conec's Infringing Products are chosen for such installations over Senko's patented products, Senko is effectively shut out from being a supplier.

30.     If US Conec is allowed to continue marketing and promoting its infringing MDC and MMC connector and adapter products, then Senko will continue to suffer irreparable harm, including loss of sales, market share, profit, and goodwill. This impacts both Senko's sale of the CS, SN, and SN-MT product platforms and also its potential participation in more lucrative sales of entire data center installations and communication networks.  In short, Senko's VSFF innovation, its current market success, and its accompanying patent rights are deeply threatened by US Conec's infringement.

31.     To eliminate further infringement and to recover appropriate legal and equitable remedies for past and ongoing infringement, Senko brings this action for patent infringement.

### THE SENKO ASSERTED PATENTS

32.     Senko has over 200 issued U.S. patents and is actively seeking additional protection for its innovative products and product features relating to fiber optic connectivity solutions. While Senko put US Conec on notice of infringement of several additional patents and claims before bringing this suit, the claims in this Complaint are for infringement of U.S. Patent Nos. 11,307,369; 11,333,836; 11,340,413; 11,415,760; 10,191,230; 11,181,701; and 11,061,190 (collectively, the "Asserted Patents"). Senko does not waive, and expressly reserves, all rights and claims for relief against US Conec and others with regard to its patent rights beyond those set forth in this Complaint.

### THE '369 PATENT

33.     U.S. Patent No. 11,307,369 (the "'369 Patent") is entitled "ULTRA - SMALL FORM FACTOR OPTICAL CONNECTORS USED AS PART OF A RECONFIGURABLE OUTER HOUSING." The '369 Patent was duly and legally issued on April 19, 2022, by the United States Patent and Trademark Office. A copy of the '369 Patent is attached to this Complaint as Exhibit A and incorporated herein by reference.

34.     Senko is the owner and assignee of the '369 Patent and possesses all rights of recovery under the '369 Patent.

35.     The '369 Patent has not expired and is in full force and effect.

36.     The '369 Patent claims are valid and enforceable.

37.     The '369 Patent relates generally to certain claimed latching and unlatching features in a very small form fiber optic connector.

**THE '836 PATENT**

38.      U.S. Patent No. 11,333,836 (the "'836 Patent") is entitled "ADAPTER FOR

OPTICAL CONNECTORS." The '836 Patent was duly and legally issued on May 17, 2022, by

the United States Patent and Trademark Office. A copy of the '836 Patent is attached to this

Complaint as Exhibit B and incorporated herein by reference.

39.      Senko is the owner and assignee of the '836 Patent and possesses all rights of

recovery under the '836 Patent.

40.      The '836 Patent has not expired and is in full force and effect.

41.      The '836 Patent claims are valid and enforceable.

42.      The '836 Patent relates generally to a partition-free adapter for aligning and

latching with multiple VSFF connectors.

**THE '413 PATENT**

43.      U.S. Patent No. 11,340,413 (the "'413 Patent") is entitled "ULTRA - SMALL

FORM FACTOR OPTICAL CONNECTORS USED AS PART OF A RECONFIGURABLE

OUTER HOUSING." The '413 Patent was duly and legally issued on May 24, 2022, by the

United States Patent and Trademark Office. A copy of the '413 Patent is attached to this

Complaint as Exhibit C and incorporated herein by reference.

44.      Senko is the owner and assignee of the '413 Patent and possesses all rights of

recovery under the '413 Patent.

45.      The '413 Patent has not expired and is in full force and effect.

46.      The '413 Patent claims are valid and enforceable.

47.      The '413 Patent relates to a multi-fiber VSFF optical connector with a polarity key

that is integrated with a pullback extraction mechanism.

**THE '760 PATENT**

48.     U.S. Patent No. 11,415,760 (the "'760 Patent") is entitled "NARROW WIDTH ADAPTERS AND CONNECTORS WITH PULL TAB RELEASE." The '760 Patent was duly and legally issued on August 16, 2022, by the United States Patent and Trademark Office. A copy of the '760 Patent is attached to this Complaint as <u>Exhibit D and incorporated herein by reference</u>.

49.     Senko is the owner and assignee of the '760 Patent and possesses all rights of recovery under the '760 Patent.

50.     The '760 Patent has not expired and is in full force and effect.

51.     The '760 Patent claims are valid and enforceable.

52.     The '760 Patent relates generally to a multi-fiber VSFF connector with a low-profile sliding interface between the connector housing and pullback remote release mechanism.

**THE '230 PATENT**

53.     U.S. Patent No. 10,191,230 (the "'230 Patent") is entitled "OPTICAL CONNECTORS WITH REVERSIBLE POLARITY." The '230 Patent was duly and legally issued on January 29, 2019, by the United States Patent and Trademark Office. A copy of the '230 Patent is attached to this Complaint as <u>Exhibit E and incorporated herein by reference</u>.

54.     The '230 Patent was the subject of *Ex Parte* Reexamination Request No. 90/014,456, on February 19, 2020. The *Ex Parte* Reexamination resulted in issuance of *Ex Parte* Reexamination Certificate No. 10,191,230 C1 (the "'230 Reexamination Certificate") on November 16, 2020. The '230 Reexamination Certificate is attached to this Complaint as <u>Exhibit F</u>. The '230 Reexamination Certificate amends claims 1, 9, 15, 19, and 23 of the '230 Patent and adds new claims 26-34.

55.     Senko is the owner and assignee of the '230 Patent and '230 Reexamination Certificate and possesses all rights of recovery under the '230 Patent and '230 Reexamination Certificate.

56.     The '230 Patent, as amended by the '230 Reexamination Certificate, has not expired and is in full force and effect.

57.     The '230 Patent claims, as amended by the '230 Reexamination Certificate, are valid and enforceable.

58.     The '230 Patent and the '230 Reexamination Certificate generally relate to duplex VSFF connectors with upper and lower couplings that facilitate polarity reversal.

## THE '701 PATENT

59.     U.S. Patent No. 11,181,701 (the "'701 Patent") is entitled "OPTICAL CONNECTORS WITH REVERSIBLE POLARITY AND METHOD OF USE." The '701 Patent was duly and legally issued on November 23, 2021, by the United States Patent and Trademark Office. A copy of the '701 Patent is attached to this Complaint as <u>Exhibit G and incorporated herein by reference</u>.

60.     Senko is the owner and assignee of the '701 Patent and possesses all rights of recovery under the '701 Patent.

61.     The '701 Patent has not expired and is in full force and effect.

62.     The '701 Patent claims are valid and enforceable.

63.     The '701 Patent generally relates to duplex VSFF connectors with removable latch elements that facilitate polarity reversal.

**THE '190 PATENT**

64.     U.S. Patent No. 11,061,190 (the "'190 Patent") is entitled "SMALL FORM

FACTOR FIBER OPTIC CONNECTOR WITH MULTI – PURPOSE BOOT ASSEMBLY."

The '190 Patent was duly and legally issued on July 13, 2021, by the United States Patent and

Trademark Office. A copy of the '190 Patent is attached to this Complaint as Exhibit H.

65.     Senko is the owner and assignee of the '190 Patent and possesses all rights of

recovery under the '190 Patent.

66.     The '190 Patent has not expired and is in full force and effect.

67.     The '190 Patent claims are valid and enforceable.

68.     The '190 Patent generally relates to a duplex VSFF connector with a rotatable

boot that can both (i) rotate to reverse the polarity of the connector and (ii) be pulled back to

release the connector from an adapter.

**DEFENDANT'S ACCUSED PRODUCTS**

69.     US Conec's infringement of Senko's patent rights by making, using, offering for

sale, selling and/or importing connector and adapter products in both the MDC and MMC

platforms has been and is continuous and ongoing.  The currently known US Conec connector

and adapter Infringing Products include:

- MDC UPC Connector

- MDC APC Connector

- MMC Connector

- MMC Adapter

- MDC 2-Port Adapter Aligned Key MDC/MDC

- MDC 3-Port Adapter MDC/MDC Jr.

- MDC 4-Port Adapter MDC/MDC Jr.

- MDC 4-Port Adapter Aligned Key MDC/MDC

- MDC 4-Port Adapter Opposed Key – MDC/MDC

**DEFENDANT'S KNOWLEDGE OF SENKO'S PATENT RIGHTS**

70.     Senko complies with the marking requirements of 35 U.S.C. § 287 at least through the websites and other materials related to its products under the Asserted Patents. Senko's marking includes a virtual patent marking page, located at https://www.senko.com/corporate/#patents, which associates its CS and SN product platforms with some of the Asserted Patents, among others.

71.     At least as of January 26, 2022, US Conec has known that Senko is a competing manufacturer of fiber optic connectors and adapters, and at least as of that same date US Conec has known about Senko's products and its corresponding patents as well.

72.     Beginning in early 2022, Senko sent multiple letters to US Conec to provide notice of Senko's Asserted Patents, among several other Senko patents. Senko sent the first notice letter on January 26, 2022, which notified US Conec of the '230 patent, the '836 patent (which at the time was an allowed patent application), and the '369 patent (which at the time was an allowed patent application), among others. Defendant thus had knowledge of certain of the Asserted Patents at least as of January 26, 2022, the date of Senko's first notice letter.

73.     Throughout 2022, Senko gave further actual pre-suit notice of its claims of infringement to US Conec on all other Asserted Patents as well.

74.     Despite having been made aware before this action was commenced of its infringing sales and marketing of MDC and MMC connectors and adapters, US Conec continues to sell and offer for sale the Infringing Products.

75.     On information and belief, US Conec has not made any attempt to redesign, modify, or withdraw any of its Infringing Products in response to Senko's notices and demands.

76.     Defendant knows and at all relevant times has known of its infringement of the Asserted Patents, or at the very least has been willfully blind to its infringement of the Asserted Patents.

77.     Upon information and belief, such infringement has been, and will continue to be, willful, and upon further belief, Defendant lacks any reasonable invalidity or non-infringement defense making this case exceptional and entitling Senko to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

## **CLAIMS FOR RELIEF**

78.     Senko's averments of infringement against US Conec that follow in Counts One – Seven and as further illustrated in the corresponding infringement charts are exemplary of, and without prejudice to Senko's ultimate infringement contentions.  The Claim Charts attached and incorporated by reference in this Complaint as Exhibits I-O have individual claim elements of a representative claim mapped to an Accused Product and shall be considered a separate averment within the meaning of the Federal Rules of Civil Procedure, for which an element-by-element response is expected in conformity with Rule 8(b) of the Federal Rules of Civil Procedure. In providing these averments, Senko does not convey or imply any particular claim constructions or purport to describe the precise scope of the claims.  Senko's claim constructions, as necessary, regarding any particularized meaning of the claim terms for the Asserted Patents' claims will be provided in accordance with the Court's scheduling order and any applicable local rules or standards.

**<u>COUNT ONE</u>**
**(INFRINGEMENT OF U.S. PATENT NO. 11,307,369)**

79.      Senko repeats, re-alleges, and incorporates by reference the averments of paragraphs 1-78 of this Complaint as though fully set forth herein.

80.      Defendant US Conec, without license or authorization to do so, has directly infringed one or more claims of the '369 Patent, currently infringes, and will continue to infringe, literally or under the doctrine of equivalents, one or more claims the '369 Patent by making, using, offering for sale and/or selling its MDC and MMC fiber optic connectivity products within this District and elsewhere in the United States, and/or importing into the United States its MDC and MMC fiber optic connectivity products, in violation of 35 U.S.C. § 271(a).

81.      Defendant's accused fiber optic connectivity products directly infringe the '369 Patent.  For example, US Conec's Accused Products infringe at least claims 1-20 and 22-39 of the '369 Patent. By way of further illustrative infringement, Senko provides an exemplary claim chart for claim 23 of the '369 patent. *See* <u>Exhibit I</u> (claim chart), attached and incorporated by reference.

82.      Defendant's past and continuing infringement of the '369 Patent by its sales and offers for sale of the Accused Products are causing economic harm to Senko, for which Senko is entitled to damages for past infringement up to and including the date of judgment in an amount to be determined by the Court but in no event less than a reasonable royalty.

83.      Defendant's infringement of Senko's rights in the 369 Patent has caused, is causing, and will continue to cause irreparable harm to Senko for which there is no adequate remedy at law, and such irreparable harm will continue unless US Conec is enjoined by this Court.

## COUNT TWO
## (INFRINGEMENT OF U.S. PATENT NO. 11,333,836)

84.     Senko repeats, re-alleges, and incorporates by reference the averments of paragraphs 1-78 of this Complaint as though fully set forth herein.

85.     Defendant US Conec, without license or authorization to do so, has infringed one or more claims of the '836 Patent, currently infringes, and will continue to infringe, literally or under the doctrine of equivalents, one or more claims the '836 Patent by making, using, offering for sale and/or selling its fiber optic adapter products within this District and elsewhere in the United States and/or importing into the United States its fiber optic adapter products, in violation of 35 U.S.C. § 271(a).

86.     Defendant's accused fiber optic adapter products directly infringe the '836 Patent. For example, US Conec's Accused Products infringe at least claims 3-5 of the '836 Patent. By way of further illustrative infringement, Senko provides an exemplary claim chart for claim 3 of the '836 patent. *See* Exhibit J (claim chart), attached and incorporated by reference.

87.     Defendant's past and continuing infringement of the '836 Patent by its sales and offers for sale of the Accused Products are causing economic harm to Senko, for which Senko is entitled to damages for past infringement up to and including the date of judgment in an amount to be determined by the Court but in no event less than a reasonable royalty.

88.     Defendant's infringement of Senko's rights in the '836 Patent has caused, is causing, and will continue to cause irreparable harm to Senko for which there is no adequate remedy at law, and such irreparable harm will continue unless US Conec is enjoined by this Court.

## COUNT THREE
### (INFRINGEMENT OF U.S. PATENT NO. 11,340,413)

89.     Senko repeats, re-alleges, and incorporates by reference the averments of paragraphs 1-78 of this Complaint as though fully set forth herein.

90.     Defendant US Conec, without license or authorization to do so, has infringed one or more claims of the '413 Patent, currently infringes, and will continue to infringe, literally or under the doctrine of equivalents, one or more claims the '413 Patent by making, using, offering for sale and/or selling its fiber optic adapter and connector products within this District and elsewhere in the United States and/or importing into the United States its fiber optic adapter and connector products, in violation of 35 U.S.C. § 271(a).

91.     Defendant's accused fiber optic connectivity products, both adapters and connectors, directly and indirectly infringe the '413 Patent. For example, US Conec's Accused Products infringe at least claims 1-8, 10, 13-18, and 20-28 of the '413 Patent. By way of further illustrative infringement, Senko provides an exemplary claim chart for claim 1 of the '413 patent. *See* Exhibit K (claim chart), attached and incorporated herein by reference.

92.     Defendant's past and continuing infringement of the '413 Patent by its sales and offers for sale of the Accused Products are causing economic harm to Senko, for which Senko is entitled to damages for past infringement up to and including the date of judgment in an amount to be determined by the Court but in no event less than a reasonable royalty.

93.     Defendant's infringement of Senko's rights in the '413 Patent has caused, is causing, and will continue to cause irreparable harm to Senko for which there is no adequate remedy at law, and such irreparable harm will continue unless US Conec is enjoined by this Court.

## COUNT FOUR
### (INFRINGEMENT OF U.S. PATENT NO. 11,415,760)

94.    Senko repeats, re-alleges, and incorporates by reference the averments of paragraphs 1-78 of this Complaint as though fully set forth herein.

95.    Defendant US Conec, without license or authorization to do so, has infringed one or more claims of the '760 Patent, currently infringes, and will continue to infringe, literally or under the doctrine of equivalents, one or more claims the '760 Patent by making, using, offering for sale and/or selling  its fiber optic adapter and connector products within this District and elsewhere in the United States and/or importing into the United States its fiber optic adapter and connector products, in violation of 35 U.S.C. § 271(a).

96.    Defendant's accused fiber optic connectivity products directly infringe the '760 Patent.  For example, US Conec's Accused Products infringe at least claims 1-4, 12, 13, and 15-17 of the '760 Patent. By way of further illustrative infringement, Senko provides an exemplary claim chart for claim 1 of the '760 patent.  *See* Exhibit L (claim chart), attached and incorporated herein by reference.

97.    Defendant's past and continuing infringement of the '760 Patent by its sales and offers for sale of the Accused Products are causing economic harm to Senko, for which Senko is entitled to damages for past infringement up to and including the date of judgment in an amount to be determined by the Court but in no event less than a reasonable royalty.

98.    Defendant's infringement of Senko's rights in the '760 Patent has caused, is causing, and will continue to cause irreparable harm to Senko for which there is no adequate remedy at law, and such irreparable harm will continue unless US Conec is enjoined by this Court.

## COUNT FIVE
## (INFRINGEMENT OF U.S. PATENT NO. 10,191,230)

99.     Senko repeats, re-alleges, and incorporates by reference the averments of paragraphs 1-78 of this Complaint as though fully set forth herein.

100.    Defendant US Conec, without license or authorization to do so, has infringed one or more claims of the '230 Patent, currently infringes, and will continue to infringe, literally or under the doctrine of equivalents, one or more claims the '230 Patent by making, using, offering for sale and/or selling its fiber optic connectivity products with polarity change features within this District and elsewhere in the United States and/or importing into the United States its fiber optic connectivity products with polarity change features, in violation of 35 U.S.C. § 271(a).

101.    Defendant's accused fiber optic connectivity products with polarity change features directly infringe the '230 Patent.  For example, US Conec's Accused Products infringe at least claims 1, 6, 9, 11, and 26-34 of the '230 Patent. By way of further illustrative infringement, Senko provides an exemplary claim chart for claim 1 of the '230 patent, as amended by the '230 Reexamination Certificate. *See* Exhibit M (claim chart), attached and incorporated herein by reference.

102.    Defendant's past and continuing infringement of the '230 Patent by its sales and offers for sale of the Accused Products are causing economic harm to Senko, for which Senko is entitled to damages for past infringement up to and including the date of judgment in an amount to be determined by the Court but in no event less than a reasonable royalty.

103.    Defendant's infringement of Senko's rights in the '230 Patent has caused, is causing, and will continue to cause irreparable harm to Senko for which there is no adequate remedy at law, and such irreparable harm will continue unless US Conec is enjoined by this Court.

## COUNT SIX
### (INFRINGEMENT OF U.S. PATENT NO. 11,181,701)

104.    Senko repeats, re-alleges, and incorporates by reference the averments of paragraphs 1-78 of this Complaint as though fully set forth here.

105.    Defendant US Conec, without license or authorization to do so, has infringed one or more claims of the '701 Patent, currently infringes, and will continue to infringe, literally or under the doctrine of equivalents, one or more claims the '701 Patent by making, using, offering for sale and/or selling its fiber optic connectivity products with polarity change features within this District and elsewhere in the United States and/or importing into the United States its fiber optic connectivity products with polarity change features, in violation of 35 U.S.C. § 271(a).

106.    Defendant's accused fiber optic connectivity products with polarity change features directly infringe the '701 Patent.  For example, US Conec's Accused Products infringe at least claims 1-53 of the '701 Patent. By way of further illustrative infringement, Senko provides an exemplary claim chart for claim 1 of the '701 patent. *See* Exhibit N (claim chart), attached and incorporated by reference.

107.    Defendant's past and continuing infringement of the '701 Patent by its sales and offers for sale of the Accused Products are causing economic harm to Senko, for which Senko is entitled to damages for past infringement up to and including the date of judgment in an amount to be determined by the Court but in no event less than a reasonable royalty.

108.    Defendant's infringement of Senko's rights in the '701 Patent has caused, is causing, and will continue to cause irreparable harm to Senko for which there is no adequate remedy at law, and such irreparable harm will continue unless US Conec is enjoined by this Court.

## COUNT SEVEN
### (INFRINGEMENT OF U.S. PATENT NO. 11,061,190)

109.    Senko repeats, re-alleges, and incorporates by reference the averments of paragraphs 1-78 of this Complaint as though fully set forth herein.

110.    Defendant US Conec, without license or authorization to do so, has infringed one or more claims of the '190 Patent, currently infringes, and will continue to infringe, literally or under the doctrine of equivalents, one or more claims the '190 Patent by making, using, offering for sale and/or selling its fiber optic connectivity products with polarity change features within this District and elsewhere in the United States and/or importing into the United States its fiber optic connectivity products with polarity change features, in violation of 35 U.S.C. § 271(a).

111.    Defendant's accused fiber optic connectivity products with polarity change features directly infringe the '190 Patent.  For example, US Conec's Accused Products infringe at least claims 1-3 and 6-20 of the '190 Patent. By way of further illustrative infringement, Senko provides an exemplary claim chart for claim 1 of the '190 patent.  *See* Exhibit O (claim chart), attached and incorporated by reference.

112.    Defendant's past and continuing infringement of the '190 Patent by its sales and offers for sale of the Accused Products are causing economic harm to Senko, for which Senko is entitled to damages for past infringement up to and including the date of judgment in an amount to be determined by the Court but in no event less than a reasonable royalty.

113.    Defendant's infringement of Senko's rights in the '190 Patent has caused, is causing, and will continue to cause irreparable harm to Senko for which there is no adequate remedy at law, and such irreparable harm will continue unless US Conec is enjoined by this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Senko respectfully requests that the Court find in its favor and against the Defendant US Conec, and that the Court grant Senko the following relief:

a. A judgment in favor of Senko that US Conec has infringed one or more claims of the following Asserted Patents of Senko: U.S. Patent Nos. 11,307,369; 11,333,836; 11,340,413; 11,415,760; 10,191,230; 11,181,701; and 11,061,190;

b. A permanent injunction pursuant to 35 U.S.C. § 283, enjoining US Conec and each of its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from continued acts of infringement, including, but not limited to, directly infringing or inducing the infringement of, or contributing to the infringement of the Asserted Patents, or such other equitable relief the Court determines is warranted;

c. An accounting of and an award to Senko of damages adequate to compensate Senko for US Conec's acts of infringement, including lost profits and/or a reasonable royalty, and also including supplemental damages for any post-verdict infringement up until entry of final judgment with an accounting as needed, together with pre-judgment and post-judgment interest pursuant to 35 U.S.C. § 284;

d. Finding US Conec's infringement to be willful and an award to Senko of enhanced damages in an amount up to treble the amount of compensatory damages as justified under 35 U.S.C. § 284 for US Conec's willful infringement;

e.   A declaration that this is an exceptional case, including, an award to Senko of its

costs, expenses, and reasonable attorneys' fees under 35 U.S.C. § 285 and all

other applicable statutes and rules in common law as may apply;

f.   An award to Senko of its costs pursuant to 35 U.S.C. § 284 and/or Fed. R. Civ. P.

54(d); and

g.   An award of any such further relief that the Court deems just and proper.


Dated: January 24, 2023

OF COUNSEL:

Kevin Conneely
STINSON LLP
50 South Sixth Street
Suite 2600
Minneapolis, MN 55402
(612) 335-1829
kevin.conneely@stinson.com

Kurt James
Jonathan Pollmann
STINSON LLP
7700 Forsyth Blvd.
Suite 1100
St. Louis, MO 63105
(314) 345-7056
kurt.james@stinson.com
jonathan.pollman@stinson.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

*Attorneys for Plaintiff*
*Senko Advanced Components, Inc.*

24

## Index of Exhibits to Complaint

| EXHIBIT NO. | DESCRIPTION |
|:---:|:---|
| A | US PATENT NO. 11,307,369 |
| B | US PATENT NO. 11,333,836 |
| C | US PATENT NO. 11,340,413 |
| D | US PATENT NO. 11,415,760 |
| E | US PATENT NO. 10,191,230 |
| F | US PATENT EX PARTE REEXAMINATION CERTIFICATE NO. 10,191,230 C1 |
| G | US PATENT NO. 11,181,701 |
| H | US PATENT NO. 11,061,190 |
| I | CLAIM CHART FOR 369 PATENT |
| J | CLAIM CHART FOR 836 PATENT |
| K | CLAIM CHART FOR 413 PATENT |
| L | CLAIM CHART FOR 760 PATENT |
| M | CLAIM CHART FOR 230 PATENT |
| N | CLAIM CHART FOR 701 PATENT |
| O | CLAIM CHART FOR 190 PATENT |